UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cr-00044-TWP-DLP |
| | ) |
| MYRON HAMILTON, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION TO SUPPRESS**

This matter is before the Court on Defendant Myron Hamilton's ("Hamilton") Motion to Suppress Evidence and Request for An Evidentiary Hearing (Filing No. 22). Following a traffic stop and search of his vehicle, Hamilton was charged with two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The issue before the Court is whether the traffic stop was prolonged beyond that necessary to issue a traffic citation, in violation of the Fourth Amendment. The Court previously determined the material facts are not in dispute and denied Hamilton's request for an evidentiary hearing. (Filing No. 34.) Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and determines that the Motion to Suppress should be **denied**.

### I. FINDINGS OF FACT

J.P. Smith ("Officer Smith") has worked in law enforcement since March 2011 and since May 2018 has been an officer with the Fishers Indiana Police Department. (Filing No. 30-2 at 1.) During his law enforcement career Officer Smith has conducted approximately 4,500 traffic stops and has identified several behavioral patterns in drivers and passengers that he considers suspicious and have led him to believe that criminal behavior may be occurring. *Id*. Those factors include:

nervous and fidgety behavior, providing false or inaccurate information regarding identity, providing inconsistent responses to questions, and lack of identifying information such as a driver's license or identification card. *Id*. at 1-2.

The following facts are corroborated by an audio and video recording of the traffic stop. (*See* [Filing No. 30-1](#).) On September 11, 2018, Officer Smith observed a 2007 Dodge Sedan exceeding the speed limit and he initiated a traffic stop at approximately 10:10 p.m. He approached the passenger side of the vehicle and came into contact with Hamilton, the front seat passenger and registered owner of the vehicle. Lashawndrea Bowie ("Bowie"), Hamilton's girlfriend, was driving the vehicle and her two year old son was in the backseat. Officer Smith asked where they were coming from and Bowie stated that she and Hamilton had just left the bank and made a deposit. ([Filing No. 30-2 at 2](#).) Officer Smith advised that he was not going to write her a ticket, rather he would give her a warning. He asked both Hamilton and Bowie for their identification. Hamilton provided identification; however, Bowie did not have a driver's license or other identification on her person. *Id*. Officer Smith requested that Bowie write her name and social security number on a piece of paper and asked if there were any weapons or drugs inside of the vehicle. Hamilton responded by stating loudly, "Hell no, there are no guns or drugs in here." *Id*. Officer Smith noticed that Hamilton's belt was undone, and his pants were unfastened. *Id*. Hamilton also nervously looked at the center console area. *Id*.

At approximately 10:14 p.m., Officer Smith returned to his vehicle and began the routine process of running Hamilton's and Bowie's information through police databases to ensure Bowie had a valid driver's license and to determine whether Bowie or Hamilton had any outstanding warrants. While running Hamilton's information through the system, Officer Smith saw that

Hamilton had prior arrests for gun and drug related charges. Because he was suspicious, Officer Smith also requested a drug detection canine to the scene. *Id*. at 2-3.

Unable to locate Bowie in any police database based on the information that she provided, Officer Smith returned to the vehicle at 10:21 p.m. and asked Bowie to rewrite the last four digits of her social security number. Bowie complied and Officer Smith returned to his vehicle to run the information. At approximately 10:22 p.m., the drug detection canine officer arrived on scene and at approximately 10:23 p.m. dispatch confirmed that Bowie did, in fact, have a valid driver's license and no outstanding warrants. Officer Smith returned to the vehicle and requested that Hamilton step out of the vehicle so that he could conduct a pat down of his person. Hamilton agreed. During the pat down Officer Smith discovered prescription pills in Hamilton's pocket and Hamilton admitted that he did not have a prescription for the pills. Officer Smith determined that he had probable cause to arrest Hamilton for the non-prescribed pills and instructed the canine handler to conduct a sweep of the vehicle. At approximately 10:28 p.m., the canine gave a positive indication for the presence of narcotics, the vehicle was searched and a SCCY 9mm handgun and a Glock 21 45 caliber handgun were located in the center console. *Id.* at 4.

## II.  DISCUSSION AND CONCLUSIONS OF LAW

In his Motion to Suppress, Hamilton asserts that the evidence obtained against him as a result of the traffic stop and the subsequent search of his vehicle violated the Fourth Amendment of the United States Constitution. Specifically, he argues the traffic stop was unreasonably prolonged and "task could have been accomplished more expeditiously than the eighteen (18) minute delay between the stop … and the 'alert' of the K-9." ([Filing No. 23 at 2](Filing No. 23 at 2).). Hamilton does not challenge the lawfulness of the traffic stop and he concedes that Bowie exceeded the speed

3

limit. He argues only that the duration of the traffic stop was excessive to complete the tasks of writing a warning ticket to Bowie and amounted to an on-scene investigation into other crimes. ([Filing No. 22 at 3](#).) Hamilton asserts that the suspicious activity noted by Officer Smith—that Hamilton's pants were "undone", and he had just been to the bank to make a deposit at 10:00 p.m.—was insufficient to create a reasonable suspicion that criminal activity might be "afoot." He notes that Officer Smith did not detect an odor of marijuana or report any "furtive movements" to justify the 18 minute stop. Thus, under a "totality of the circumstances" test, he asserts that Officer Smith had no articulable facts to extend the detention beyond the time necessary to write a traffic ticket or warning.

In contrast, the Government contends that the traffic stop was not unreasonably prolonged, and that Officer Smith developed reasonable suspicion of a crime independent of the traffic violation to justify the deployment of the canine and the subsequent search of Hamilton's vehicle. ([Filing No. 30](#).)

A traffic stop that is "lawful at its inception" can nonetheless violate the Fourth Amendment if it is "prolonged beyond the time reasonably required to complete" the initial mission of the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The United States Supreme Court has made clear that "an officer's inquiries into matters unrelated to the justification for the traffic stop, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *See Muehler v. Mena*, 544 U.S. 93, 100-101, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005). The Supreme Court's decision in *Mena*, confirms that an officer can validly ask questions during a lawful traffic stop that are unrelated to the stop. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 10th Cir. 2006)

4

(holding, in light of *Mena*, that as long as officer's questioning does not extend length of traffic detention, there is no Fourth Amendment issue regarding the content of the officer's questions); *United States v. Wallace*, 429 F.3d 969, 974 (10th Cir. 2005).

Both parties cite to *United States v. Rodriguez*, 135 S. Ct. 1609, 1614-15 (2015) and note that traffic stops are not deemed unconstitutional based on their duration as long as the stop is not unreasonably prolonged. In *Rodriguez*, the Supreme Court considered "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." The court held that "the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id*. at 1614. Unrelated inquiries may not measurably prolong a traffic stop, although an officer may conduct ordinary inquiries incident to the stop such as questions involving the driver's license, the vehicle's registration, and whether there are outstanding warrants for the driver. *Id*. at 1615. These activities are all related to the mission and objective of enforcing the traffic code, and "ensuring that vehicles on the road are operated safely and responsibly." *Id*. Because traffic stops are "especially fraught with danger to police officers," an officer may also take "certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at 1616 (citing *Arizona v. Johnson*, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009)). Dog sniffs, the court said, may not be fairly characterized as part of the officer's traffic mission, and so dog sniffs may not prolong or add time to the stop unless supported separately by individualized, reasonable suspicion. *Rodriguez*, 135 S.Ct. at 1616–17.

Here, the duration of the traffic stop was reasonable, and thus did not violate Hamilton's Fourth Amendment rights. The entire length of the stop was approximately 18 minutes from the

time Officer Smith activated his overhead lights until the drug detection canine arrived and alerted on the vehicle. The stop was initiated at approximately 10:10 p.m., and it was not until 10:23 p.m. that Officer Smith was able to verify Bowie's identification and complete the warrant checks. Officer Smith's questioning of Hamilton and Bowie while investigating their identities did not prolong the stop. Instead, a large majority of the time during the stop was to conduct a computerized identification and warrant check because Bowie, the driver of the vehicle, did not have a driver's license or other identification on her person. Additional delay is attributed to the social security number that Bowie initially provided which was either incorrect or illegible and Officer Smith had to have her re-write the last four digits of her social security number. The Seventh Circuit has found such a delay to be reasonable. *See U.S. v. Wilkie*, 182 Fed. Appx. 533 (7th Cir. 2006) (defendants were partly to blame for the length of the stop, which lasted approximately 20 minutes before the stopping officer had a dog perform a drug sniff, as one defendant's driver's license was missing information, such that the stopping officer had to ask him additional questions to determine whether it was valid, and the other defendant spent several minutes unsuccessfully trying to locate proof of insurance); *U.S. v. McBride*, 635 F.3d 879 (7th Cir. 2011) (25-minute detention of defendant from initiation of traffic stop of defendant's vehicle until defendant consented to search of the vehicle was not unreasonable; officer spent most of the stop performing routine police work, such as gathering information about the vehicle and its occupants, relaying information to dispatch, and writing a ticket, and the officer's additional questions took roughly two minutes).

At approximately 10:23 p.m. the canine handler arrived and began the sniff. During that time Hamilton was asked and consented to stepping outside the vehicle for a pat-down. The pat

down resulted in pills being located in Hamilton's pocket, for which Hamilton admitted he did not have a prescription. Hamilton concedes that the search of his vehicle *after* the K-9 alert satisfied the Fourth Amendment under the "exigent circumstances" or automobile exception to the warrant requirement. ([Filing No. 22 at 3](#).) Because approximately 13 minutes of the 18 minute stop are attributed to routine police work related to the traffic stop, the Court finds the stop was not prolonged in violation of Hamilton's Fourth Amendment rights.

Moreover, even if the Court were to find the delay to be prolonged, the "articulable facts" are sufficient to support a reasonable suspicion that criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). When evaluating reasonable suspicion, courts must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 441, 417(1981). Officer Smith testified in his affidavit that reasonable suspicion of criminal activity was supported by the couple's statement that they were banking at 10:00 p.m., the driver of the vehicle had no identification on her person, Hamilton's belt was undone, and his pants unbuttoned (which the Court infers caused the officer to believe Hamilton had quickly removed something from his pants), Hamilton's nervousness and looking at the center console, and his record of arrests for gun and drug related charges. An officer conducting a *Terry* stop "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Here, the objective facts that Officer Smith observed gave him a reasonable basis for believing that criminal activity was afoot. The 'totality of the circumstances' test "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States*

*v. Rodriguez-Escalera*, 884 F .3d 661, 670 (7th Cir. 2018), citing *U. S. v. Arvizu*, 534 U.S. 266, 273–74 (2002). The Court gives little weight to Officer Smith's testimony regarding suspicions raised by night banking in Fishers, Indiana. However, the remaining factors are credible to raise a reasonable suspicion.

### III. CONCLUSION

Had Bowie possessed a valid driver's license on her person at the time of the traffic stop, it might have been difficult to justify an eighteen minute traffic stop. But based on the circumstances here, the Court does not find that the eighteen minute traffic stop before the canine alerted to be unreasonably prolonged. For the reasons set forth above, Hamilton's Motion to Suppress Evidence and Request for an Evidentiary Hearing is **DENIED** (Filing No. 22).

**SO ORDERED.**

Date: 8/30/2019

*[signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jack Crawford
CRAWFORD & DEVANE
crawdedevlaw@indy.rr.com

Lawrence Hilton
UNITED STATES ATTORNEY'S OFFICE
lawrence.hilton@usdoj.gov